## MIDDLETON et al. v. HUMBLE.
### No. 5356.

Court of Appeal of Louisiana. Second Circuit.

March 1, 1937.

Madison, Madison & Fuller, of Bastrop, for appellants.

W. D. Cotton, of Rayville, and C. T. Munholland, of Monroe, for appellee.

DREW, Judge.

This case has been here before. The last time it was here we remanded the case for the purpose of hearing testimony as to agency.

Plaintiffs sued for damages for the death of their child who was killed by an automobile owned by defendant and alleged to have been driven at the time of the accident by an employee or agent of defendant acting within the scope of his employment. The reasons for remanding the case for further testimony are fully stated in the former decision of this court, reported in 154 So. 400. After hearing testimony on the question of agency, the lower court found that the driver of the car at the time of the fatal accident was not the agent of defendant and rejected plaintiffs' demands. They have appealed to this court.

The car involved in the accident was owned by the defendant. The driver of

the car was a negro boy by the name of J. D. McIntosh, whom plaintiff had used on that morning to drive him from his home to Goldmine Plantation which was owned and operated by defendant. McIntosh was not in the defendant's regular employ. He lived on the defendant's wife's plantation which was owned and operated by her separate and apart from her husband. Defendant occasionally used McIntosh to drive for him, as he did other negro boys on his place and on his wife's place.

About 2:30 p. m., on the day of the accident, defendant entered his house on the Goldmine Plantation for the purpose of lying down. He met Corrine Whitler, a negro woman who was living on the place, as she was coming out of the hall in the house, and, as defendant described her, "she was all dressed up." He asked her where she was going and she replied that she was waiting for Louis Scoby to take her to a doctor at Baskin, a nearby village, "but he hadn't showed up." She then asked defendant to loan to her his car to make the trip. He replied, "Go ahead, take it, I am going up in my room." He did not see her again until late in the afternoon when she returned. He then learned for the first time that J. D. McIntosh had driven the car for Corrine, and also learned of the accident.

Corrine Whitler was not in the employ of defendant. She was reared on the Goldmine Plantation, but due to bad health she was not making a crop that year. She was not cooking for defendant. She lived on the place, but was making her living raising turkeys and selling milk from some cows she owned. She was not being furnished by defendant. We understand from the record that she was on the place through sufferance of defendant due to the fact that she had always lived there. Defendant was under no obligation to furnish her medical attention and did not furnish it to her in this instance. She did not even go to the doctors defendant used for his employees. Defendant did not authorize J. D. McIntosh to drive Corrine to see the doctor. He drove at the request of Corrine. There were several other darkies on the place, any one of whom she could have secured. Therefore, at the time of the accident, the driver of the car, J. D. McIntosh, was not on a mission for the defendant. He was on a mission for Corrine Whitler, who has not been sued in this case.

Plaintiff relies upon the rule of law that when it is proved that the car is owned by the defendant, and the driver of the car at the time of the accident was one who is in the general employ of defendant, it is presumed the driver was acting within the scope of his employment and was on a mission for his employer at the time. The rule of law is sound for the reason it is in many instances peculiarly and solely within the knowledge of the driver and his employer as to the mission the driver is on at the time of the accident. This presumption, however, is always subject to attack, and where there is positive proof that the driver was not at the time on a mission of his master, the presumption is overcome. The presumption only makes out a prima facie case and when rebutted with positive testimony, fades away and is destroyed. There are some cases from this jurisdiction, and others in this state, which apparently hold that it is encumbent upon plaintiff to prove that the driver was acting within the scope of his employment at the time of the accident. A careful study of those cases will disclose that the statements were made by the courts due to the facts of each particular case, and in each of the cases the facts proved are that the driver or agent was not at the time on a mission for his employer and was on a mission of his own. There are no cases which hold that plaintiff has not made out a prima facie case when he proves the ownership of the car in the defendant and that the driver is in the employ of defendant. In the case of Johnson v. Jim Brownlee, Inc., 13 La.App. 86, 127 So. 127, 128, we said:

"The jurisprudence of this state is that an allegation and proof showing the ownership of the automobile, and that it was being operated at the time by an employee of the owner, is sufficient to make out a prima facie case and to raise the presumption that the servant was acting within the scope of his employment, and that the burden is then thrown on the owner to show the contrary. May v. Yellow Cab Co., 164 La. 920, 114 So. 836; Swedman v. Standard Oil Co. of La. [12 La.App. 359], 125 So. 481."

This rule is not applicable here for the reasons above given. Even though we should find that J. D. McIntosh was in the regular employ of defendant, the record clearly discloses he was not acting within

**544**

the scope of his employment at the time of the accident.

We therefore conclude that the defendant was not liable for the negligence of the driver of the car; and the judgment of the lower court is affirmed with costs.